UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDREA M. PAVLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | Civil Action No. 12-10470-JCB |
| | ) | |
| Defendant/Crossclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEW ENGLAND INDUSTRIAL | ) | |
| UNIFORM SERVICE, INC., | ) | |
| | ) | |
| Crossclaim Defendant. | ) | |

**ORDER ON DEFENDANT UNITED STATES OF
AMERICA'S MOTION FOR SUMMARY JUDGMENT**
[Docket No. 48]

March 19, 2014

Boal, M.J.

Plaintiff Andrea M. Pavlas ("Pavlas") brings suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, et seq., alleging that she slipped and fell on a mat at the Hanscom Air Force Base commissary in Bedford, Massachusetts. Defendant United States of America has filed a motion for summary judgment. Docket No. 48. For the following reasons, this Court grants the government's motion.[1]

---

[1] On August 15, 2012, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge for all purposes. Docket No. 11.

I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

    A.  The Relationship Between NEU And The United States

The government, which owns the commissary, hired New England Industrial Uniform Service, Inc. ("NEU") to provide "linen/laundry, dry cleaning and mat services" for the commissary. DSMF ¶¶ 3, 17; Docket No. 49-4 at 24 ¶ 1.[3] The pertinent contract between the government and NEU provides that all mats supplied must be "heavy duty" ones that "stay in place and remain flat and wrinkle/bunch free during normal use in a grocery store environment, including shopping cart traffic." DSMF ¶ 18; Docket No. 49-4 at 24 ¶ 2(e). Pursuant to the contract, the commissary would both inspect the mats and had the right to reject any that failed to meet the above conditions. See DSMF ¶ 20, Docket No. 49-4 at 24 ¶¶ 2(f), 5. The contract also contains a provision captioned "Liability to Third Persons," which provides that NEU "shall be responsible for and hold the Government harmless from all claims on the part of persons not a party to this contract for personal injury . . . caused in whole or in part by the fault or negligence of [NEU] in the performance of work under this contract." DSMF ¶ 19; Docket No. 49-4 at 17, § 52.228-4500.

NEU employee Thomas Slowick ("Slowick") delivered mats to the commissary every Friday morning at 8 a.m. DSMF ¶ 22. When he arrived, he would enter the commissary through

---

[2] For purposes of the government's motion for summary judgment, the Court sets out any disputed facts in the light most favorable to Pavlas. See DeNolvellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997). The facts, unless otherwise noted, are undisputed and are derived from: (1) the United States' Statement of Material and Undisputed Facts, and Pavlas' responses thereto ("DSMF_") (Docket No. 56); and (2) Pavlas's Statement of Material and Undisputed Facts ("PSMF _") (Docket No. 55).

[3] When referring to the parties' pleadings and exhibits, the Court cites to the docket page numbers rather than to the page numbers of the original documents.

the customer entrance, collect the mats[4] from the commissary floor, and replace them with new ones. Id. at ¶ 25. Slowick was not supervised by anyone from the commissary during this process. Id. at ¶ 26. Slowick was also responsible for inspecting the mats. Id. at ¶¶ 13, 27. If he noticed that a mat was torn or ripped, he would bring it back to NEU. See id. at ¶ 28; Docket No. 49-7 at 9.

B. Pavlas's Slip & Fall

Pavlas arrived at the commissary at approximately 2 p.m. on June 5, 2010. DSMF ¶ 8. Sometime after she entered the commissary, she tripped and fell on a mat. Id. at ¶ 9. Pavlas alleges that the mat was "buckled, rippled, ripped, torn, worn, and not laying flat on the floor in the entranceway." DSMF ¶ 4; Complaint, ¶ 11. There are no known witnesses to Pavlas's fall and no evidence of what the mat looked like prior to her fall. DSMF ¶¶ 10, 12. Slowick delivered the mat at issue to the commissary the day before the incident. See id. at ¶¶ 13, 22.

Anthony Gardner ("Gardner"), assistant commissary officer and store manager, began his shift approximately two hours prior to Pavlas's fall. Id. at ¶ 14, PSMF ¶¶ 1, 3. As part of his responsibilities, Gardner conducts daily safety inspections of the commissary. DSMF ¶ 15; Docket No. 54, Ex. B at 12-13. Gardner inspected the commissary on the date of Pavlas's fall, but did not notice any defect in the subject mat. DSMF ¶ 16; Docket No. 54, Ex. B at 19-21. Later that day, Gardner was informed by a co-worker that someone had fallen in the front of the store. PSMF ¶ 5. After speaking with Pavlas, Gardner filled out an accident report and removed the mat. Id. at ¶ 6; Docket No. 54, Ex. D. In his report, Gardner noted that Pavlas "tripped over

---

[4] The parties' pleadings and exhibits refer interchangeably to a "mat," a "rug," and a "carpet." See, e.g., DSMF ¶¶ 13-16; Complaint, ¶ 11, Docket No. 54 at 1; Docket No. 54, Ex. B. at 21. Because the agreement between NEU and the government refers specifically to "mats," this Court uses that term herein.

[mat] entering commissary. [Mat] did [sic] buckles in it which causes [mat] not to lay flat. [Pavlas] fell and landed on her left knee and left elbow which caused bruising and pain." PSMF ¶ 11; Docket No. 54, Ex. D at 3.

    C.    <u>Procedural Background</u>

On March 13, 2012, Pavlas filed a complaint alleging negligence against the government (Count I) and NEU (Count II). Docket No. 1. NEU and the government answered Pavlas' complaint on May 7 and 22, 2012, respectively, and filed crossclaims against each other for contribution and/or indemnification. Docket Nos. 6, 7. On July 12, 2013, after some discovery, the Court referred this case to mediation. Docket No. 36. During a November 21, 2013 mediation session, Pavlas and NEU settled. Docket No. 46.

On December 20, 2013, the government filed the present motion for summary judgment. Docket No. 48. Pavlas opposed the motion on January 24, 2014 and, with leave of Court, the government filed a reply brief on February 10, 2014. The Court heard oral argument on March 5, 2014.

II.    <u>ANALYSIS</u>

The government moves for summary judgment. Docket No. 48. The government argues that this Court lacks subject matter jurisdiction over Pavlas's remaining claim because the United States has not waived sovereign immunity with respect to the conduct of its independent contractors. Docket No. 49 at 1. In the alternative, the government contends that Pavlas is unable to prove her negligence claim. <u>Id.</u> at 2.

    A.    <u>Standard Of Review</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential to affect the outcome of the suit under the applicable law."  Id. (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  See id. at 324.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

"[T]he material creating the factual dispute must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth.  Optimistic conjecture . . . or hopeful surmise will not suffice."  Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 338 (1st Cir. 1997).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B. <u>Sovereign Immunity</u>

Sovereign immunity is a jurisdictional bar to suits against the federal government. See <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994). Accordingly, the United States is immune from suit unless it consents to be sued. <u>United States v. Mitchell</u>, 445 U.S. 535, 537 (1980); <u>Bolduc v. United States</u>, 402 F.3d 50, 55 (1st Cir. 2005). The FTCA provides a "carefully limited waiver" of the United States' sovereign immunity for certain tort claims. <u>Carroll v. United States</u>, 661 F.3d 87, 93 (1st Cir. 2011) (citation omitted). Specifically, it provides that federal courts shall have exclusive jurisdiction for claims against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Because the FTCA is a waiver of sovereign immunity, it must be strictly construed. <u>Carroll</u>, 661 F.3d at 94; <u>Skwira v. United States</u>, 344 F.3d 64, 73 (1st Cir. 2003).

The FTCA only waives the sovereign immunity of the United States for suits based on the actions or omissions of federal agencies or employees. 28 U.S.C. § 1346(b)(1). It expressly excludes from its coverage any "contractor with the United States." 28 U.S.C. § 2671. "The key factor governing whether an entity providing services to the United States is an independent contractor is whether the contractor, rather than the government, exercises day-to-day supervision and control of its own activities." <u>Carroll</u>, 661 F.3d at 95. The government's right "to inspect the work of a contractor and to stop work that does not conform to the terms of the contract does not constitute control over the contractor's employees." <u>Rios Colon v. United</u>

States, 928 F. Supp. 2d 388, 393 (D.P.R. 2012) (quoting Brooks v. A.R. & S. Enters., 622 F.2d 8, 12 (1st Cir. 1980)).

Here, the record demonstrates that NEU is an independent contractor under the FTCA. The underlying contract provided that NEU was responsible for, among other things, furnishing and delivering mats to the commissary. Docket No. 49-4 at 24 ¶ 1. Slowick, on behalf of NEU, performed these duties without supervision from any government employee. DSMF at ¶¶ 13, 22, 25-27. At most, federal employees retained the right to inspect NEU's activities to ensure that NEU fulfilled its contractual obligations. See DSMF ¶ 20; Docket No. 49-4 at 24 ¶¶ 2(f), 5. Accordingly, this Court lacks subject matter jurisdiction for any claim against the United States based on the conduct of NEU employees.

Pavlas's claim against the United States, however, is based on the negligence of United States employees. She alleges that the "United States owed a duty . . . to maintain the [commissary] in a reasonably safe condition and to take all reasonably necessary steps to provide safe entry into the building." Complaint, ¶ 18. She further alleges that the government and its employees breached that duty by "allowing a dangerous and defective [mat] to lay on the floor at the entranceway into the [commissary] . . ." Id. at ¶ 19; see also Docket No. 54 at 5. The independent contractor exception does not apply in such circumstances. See Logue v. United States, 412 U.S. 521, 533 (1973); Diaz v. United States, 372 F. Supp. 2d 676, 680 (D.P.R. 2005) (retaining subject matter jurisdiction for claims that directly implicate the acts and/or omissions of government employees, but not those involving the contractor's acts or omissions); Stotmeister v. Cherry Hill Const., Inc., No. 05-0813(RBW), 2006 WL 1933871, at *5-6 (D.D.C. July 11, 2006) (denying government's motion to dismiss under Fed. R. Civ. P. 12(b)(1) where plaintiff alleged negligence on part of GSA employees).

Accordingly, the Court finds that it has subject matter jurisdiction over Pavlas's claim against the United States based on the alleged actions or inaction of its own employees.

C.  Negligence

The government argues that Pavlas lacks evidence necessary to prove her negligence claim.  Docket No. 49 at 10-11.

A tort action is cognizable under the FTCA only where the "United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Accordingly, the "law of the place" provides the substantive rules to be used in FTCA actions.  Bolduc, 402 F.3d at 56.  The phrase "law of the place" refers to the law of the state in which the allegedly tortious conduct occurred.  Id.  Under Massachusetts law, "a plaintiff seeking to recover against a shopkeeper for a fall on the premises must prove both that a dangerous condition existed and that the shopkeeper had notice, actual or constructive, of the dangerous condition but took no corrective action."  Gomez v. Stop & Shop Supermkt. Co., 670 F.3d 395, 397 (1st Cir. 2012) (citing Sheehan v. Roche Bros. Supermkts., Inc., 448 Mass. 780 (2007)).

Here, Pavlas has not presented any evidence that a dangerous condition existed prior to her fall.[5]  Pavlas testified that, after she fell, she noticed rips, tears, and ripples in the mat. DSMF ¶ 11; Docket No. 49-5 at 7.  Gardner, who arrived at the scene of the accident after Pavlas

---

[5] To that end, Pavlas states that she was deprived of the opportunity to inspect the mat at issue because commissary management ordered NEU to remove the mat.  Docket No. 54 at 9-10. However, the unavailability of the mat does not preclude the award of summary judgment in the government's favor.  The government acknowledges that a commissary employee called NEU after the incident and requested that NEU collect the mats.  Docket No. 60 at 3 n. 1.  NEU, however, owns the mat at issue, and there is no allegation that anyone from the commissary destroyed or otherwise tampered with the mat.  In any event, even if Pavlas had been afforded the opportunity to inspect the mat after her fall, there would be still no evidence of the commissary's notice of any defect.

had already fallen, confirmed that the mat was buckled at that time. DSMF ¶¶ 10-11. However, Pavlas acknowledges that she did not notice the condition of the mat prior to her fall, and that there are no known witnesses to her fall. Id. at ¶¶ 10, 12; Docket No. 49-5 at 9.[6]

Further, even assuming that the mat constituted a dangerous condition, Pavlas has presented no evidence that commissary employees had actual or constructive knowledge of such condition. There is, for example, no evidence suggesting that anyone tripped or fell over the subject mat prior to Pavlas's fall or that anyone reported a problem regarding the mat to commissary staff. Likewise, there is no evidence regarding when the mat became buckled or ripped, so as to charge the commissary employees with constructive notice. Indeed, Gardner's undisputed testimony shows that when he inspected the mat approximately two hours before Pavlas' fall, he noticed no problems with it. Docket No. 54, Ex. B at 19-21.

Pavlas nevertheless argues that the commissary employees had constructive notice under the "mode of operation" approach.[7] Docket No. 54 at 6-7. Under this approach, which applies to self-service stores such as groceries, the notice requirement is satisfied "where an owner's

---

[6] Pavlas also argues that the commissary employees were on notice of a foreseeably dangerous condition because of a prior slip and fall involving a NEU mat. Docket No. 54 at 8. However, the undisputed evidence shows that NEU replaced the mats at the commissary on a weekly basis and delivered the subject mat to the commissary the day before Pavlas's fall. See DSMF ¶¶ 13, 22. There is no suggestion that the same mat was involved in both incidents. Accordingly, the prior slip and fall did not put commissary employees on notice of any defect with respect to the mat at issue here.

[7] It is unclear whether this approach applies to this case. The rationale behind the mode of operation approach is "the increased spillage and breakage that may occur when customers handle items without employee assistance." Gomez, 670 F.3d at 397; see also Smart v. Demoulas Supermkts., Inc., No. 07-ADMS-10068, 2008 WL 2165948, at *3-4 (Mass. App. Div. May 16, 2008) (finding mode of operation approach inapplicable where plaintiff alleged that she slipped on a puddle of water in supermarket). Pavlas, however, alleges that she was injured when she tripped over a mat at the commissary's entranceway, not that she fell over spilled or broken items that had been handled by other store customers. Complaint, ¶ 11.

chosen mode of operation makes it reasonably foreseeable that a dangerous condition will occur, a store owner [can] be held liable for injuries to an invitee if the plaintiff proves that the store owner failed to take all reasonable precautions necessary to protect invitees from these foreseeable dangerous conditions." Gomez, 670 F.3d at 397 (citation omitted).

Here, Pavlas has not satisfied these requirements. Indeed, the undisputed evidence is to the contrary. The mat was replaced the day before the accident. DSMF ¶¶ 13, 22. Gardner inspected the mat approximately two hours before the incident. Id. at ¶¶ 14-16; Docket No. 54, Ex. B at 19-21.

Accordingly, there is no genuine issue of material fact as to whether the negligence of commissary employees caused Pavlas's fall, and the government is entitled to summary judgment.

III. ORDER

For the foregoing reasons, the Court orders as follows:

1. The government's motion for summary judgment (Docket No. 48) is granted; and

2. Judgment will issue dismissing this action.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE